Mr. Hellitzer, did I come close? Yes, Judge. And I didn't let you announce the case, did I? 318-0528 Division-Gaylord, LLC Appellee by Scott Hoster v. Peter Konopka Appellant by Glenn Heilitzer May it please the Court, Glenn Heilitzer for the appellant, Peter Konopka. Mr. Konopka appeals the denial of his two motions, one brought pursuant to Section 2-619A3 and one brought pursuant to Section 2-1301E, both of which challenged the trial court's entry of a judgment of foreclosure and sale. The judgment was entered against Crest Hill Land Development, LLC, the mortgagor, in favor of Division-Gaylord, LLC, the current mortgagee. Mr. Konopka and the remaining individual non-appealing co-defendant, Roger Duba, are the sole members of Crest Hill Land Development, LLC, the mortgagor. There was a $4 million loan balance. Although Crest Hill, over the life of the loan, paid roughly $5 million, a million dollars more than the loan balance, by the time the case got to judgment, Division-Gaylord contended an additional $5 million was due, consisting of unpaid interest and advancements. In the trial court, Crest Hill Land Development was represented by its own attorney. When Division-Gaylord moved for summary judgment, the attorney for Crest Hill Land Development, who, again, represented Crest Hill and had appeared in the case, only made a minor mathematical objection to this $5 million judgment that was being sought, and that was roughly $85,000. So the $85,000 was removed from the amount claimed, and the summary judgment of foreclosure and sale was entered. My client, Mr. Konopka, although he was named in the complaint, which I'll get to in a second, had not appeared in the case, had not been served, and consequently he appeared through counsel following the judgment of foreclosure and sale, and prior to the actual sale occurring by just a few days, and presented his two motions. As to the 619A3 motion, Mr. Konopka set forth that there was a prior pending case in Cook County that involved squarely the same subject matter that was being litigated here in Will County in the foreclosure, and the case should be dismissed or stay pending resolution of that prior pending case. He also argued, pursuant to 2-1301E, that there were many manifest errors in the judgment of foreclosure and sale, the resolution of which would either moot the foreclosure case completely or result in a substantially reduced deficiency judgment. The trial court essentially ruled that my client, Mr. Konopka, lacked standing to present these motions. This followed, at the hearing of our motions, this followed the courts having allowed Division Gaylords' Counsel to voluntarily dismiss my client from all proceedings in the case as a party defendant. So the way it occurred was we presented our motions, Division Gaylord voluntarily dismissed my client from the case, and the judge essentially ruled that Mr. Konopka therefore lacked standing to present his arguments. The court also noted that Cresthill had its own counsel, and that Cresthill's own counsel had no objection to the judgment of foreclosure and sale, and so for those reasons the trial court denied both of my client's motions. The case went on to sale, Division Gaylord bid a million dollars for the property itself and acquired the property by judicial deed, leaving a $4 million or thereabouts deficiency judgment. Your Honors, there are five undisputed facts that underlie this appeal, and the first I've already alluded to is the existence of the Cook County lawsuit. That's a lawsuit filed, I believe, the pleading that's attached here in the record was filed, I believe, in 2013, long before this foreclosure was filed in 2016. And the case that was filed in Cook County had derivative claims filed by Mr. Konopka on behalf of Cresthill, pursuant to the Illinois Limited Liability Company Act, seeking to challenge Division Gaylord's right to foreclose on the subject mortgage loan in this case. And I won't go into the facts in great detail, but essentially Mr. Konopka alleges in the Cook County litigation that his co-member, Roger Duba, set up Division Gaylord as his alter ego entity, made fraudulent promises to Mr. Konopka to agree to a $2.15 million loan payment to the prior lender, the lender that then had the loan, in return for an agreed loan modification, which would have afforded Cresthill tremendous relief and allowed it to pay off the loan. And once Mr. Konopka agreed to that $2.15 million payment, and the payment was made, Mr. Duba reneged, acquired the loan himself, funded the loan himself, set up Division Gaylord to receive the loan, controlled Division Gaylord as his alter ego, and then declared a default, and has been attempting to foreclose ever since. So in that Cook County case... Was there a lawsuit after that agreement with the original lender? I'm sorry, Judge, I didn't hear the first part. Well, I mean, I'm trying to put all this perspective in simple man's terms. Okay. Is that Cresthill is a developer, correct? Yes, it's a development company. Okay. They got a loan from the original lender, correct? Yes. Okay. And these are two partners in the LLC of Cresthill, right? Yes. Okay. And they run into trouble, right? Yes. And so they enter into a negotiation with the original lender with some modifications on that, right? Yes. And the original lender says, agrees to these modifications, and only your client signs the agreement, correct? I mean, how does that work? Well, there's an email in the record that manifests Mr. Duba's consent through his attorney to the agreement, but as to actual signatures, Mr. Duba refused to sign. Thank you. Yes. Right. And what action took place by your client thereafter? With respect to Mr. Duba's conduct. Yeah, basically. He filed the lawsuit in Cook County... Okay. ...challenging Mr. Duba's and also Division Gaylord's right to foreclose. Well, you're pretty far down the road now. I'm talking about immediately. You have a limited liability partner that you have ostensibly negotiated on behalf of yourself and that partner to get some financial relief from the original lender, correct? That's correct. Okay. That's pretty correct. Right. Okay. And then he signs, and who pays that $2 million? Well, Crest Hill pays it, but Mr. Konopka is the managing member at that point, so he allows it to occur. Correct. So Crest Hill... So it did come out of Mr. Koppa's pocket? The $2.15 million... Came out of the company's assets? That's correct. Okay. No, that's a good clarifying question. We're trying to get at these facts. Everybody's losses over where we are on this stuff. Okay? And so Crest Hill writes out a check, and then what was Mr. Duba or what was he supposed to do in your lawsuit that you filed? Well, immediately, a predecessor attorney filed a lawsuit immediately in Cook County seeking to stop Mr. Duba through Division Gaylord, acquired the loan, and declared a foreclosure. This is not the first foreclosure case that's been filed over this. Right, because it was a delinquent account, because apparently, how would it not have been made a delinquent account after this negotiation, this modification with the original lender? Had the loan modification gone through, Judge, then what would have happened was the $2.15 million payment would have been applied against the principal balance. Interest would have accrued at 5%. Those are all the terms of it. I don't care about that. But I'm talking about, basically, what did they do with that $2 million instead? Because Duba apparently didn't sign off on the agreement. Is that correct? That's correct. He refused to sign. Right, so the agreement was null and void to the original lender, and they took the Crest Hill payment, and they applied it to? Against principal and interest. Against principal and interest. But they didn't do the extension and the interest part of the agreement, right? Correct, and Crest Hill remained in default. Instead, they sold the note to someone else, which you're claiming is an alter ego. That's correct. It's an answer. They sold the note. The alter ego bought the note and began the foreclosure. That's correct. Okay, and that's the whole essence of a good county lawsuit. There are numerous counts, but as to this foreclosure case, yes. In count 12 of the Fourth Amendment complaint, Mr. Kanaka seeks various forms of relief. He seeks an order declaring that the adjusted interest rate that would have been offered by the original lender apply. That's roughly 5%, not the 18% default rate. And he also asks for an order enjoining Division Gaylord from proceeding with any foreclosure. And what's the essence of this lawsuit right here? The essence of this lawsuit is a foreclosure case that Division Gaylord filed to foreclose on the collateral and obtain a deficiency judgment. Are there any motions to stay in this action and what kind of a subsequent action? I filed a motion to dismiss or stay pursuant to Section 2-61983. Okay, good. And that's where we are? Yes. Okay, thank you. Okay, so now I have to jump in. Was there a personal guarantee here by both Mr. Duba and Mr. Kanaka to the bank? Yes. Originally, both Mr. Duba and Mr. Kanaka provided personal guarantees of the debt amount to First National Bank. Either the bank got nervous or the partners got nervous, and they renegotiated the terms of the law, I think. And the bank says, if you put down $2.5 million, then we'll excuse you from your personal guarantees. Is that the way it worked? I don't believe that's the case. The first time the release of personal guarantees came up was in dealings between Mr. Kanaka, Crest Hill, Duba, and Division Gaylord, reposed in the forbearance agreement that's part of the record in this case, and a simultaneously executed settlement agreement that's in the record in this case. That was after Division Gaylord acquired the loan, right? Yes, this is in 2014. It's been about a year after they acquired the loan. There was negotiations. Yes, and that arrangement had three principal purposes. At the time, there was roughly $6 million, I believe, in development proceeds. Crest Hill is doing its business, and money is being deposited with Chicago title or First American title to be dispersed. And part of those funds that was agreed would go to pay part of this loan that Division Gaylord now held. So one of the objections in having this forbearance agreement and settlement agreement was to allow Division Gaylord to receive a part of those funds with the agreement of all parties. The second purpose was to release both Mr. Duba and Mr. Kanaka from their personal guarantees. So the forbearance agreement and the settlement agreement do that and announce and agree that both individuals are released from their personal guarantees. And the third purpose of those two agreements was to give a way out, a potential way out for Crest Hill to pay Division Gaylord an amount of money to satisfy this mortgage loan. And it had specific terms. Interest is going to run at 9% up until a certain time, and if it's not paid off by that time, it reverts back to a larger interest rate. It's our position, and you're going to hear from my opponent, that that's actually conclusive here, that by signing those documents, Mr. Kanaka agreed to pay these deficiency interest rate amounts and such. But that's not the case. It was a way out, but the agreement contains language that reserves specifically, and it's in our brief, Mr. Kanaka's right to challenge Division Gaylord's acquisition of the loan and to challenge its assertion of the 18% delinquency interest rate. So it was a way out, a potential way out. Crest Hill certainly could have, within the 18-month period provided in that agreement, paid off the loan if it had sufficient assets, and we wouldn't be here. But it wasn't conclusive. We disagree with counsel that that agreement provides that if the loan isn't paid off, then Mr. Kanaka has waived his right to fight Division Gaylord, to fight Mr. Duba, and their acquisition of this commercial paper. Counselor, you have two minutes. Thank you. So I guess I'm going to have to boil this down a little bit. We've talked about the Cook County lawsuit. The next principal fact is that Mr. Kanaka was specifically named. Your Honor has pointed out that Crest Hill is the foreclosure defendant, the obligor on the note, on the paper. Division Gaylord decided to include my client personally, Mr. Kanaka, as a defendant in the foreclosure claim whose interest was sought to be terminated. And it also listed Mr. Kanaka as a person claimed to be liable for any deficiency in the case. Again, Mr. Kanaka was never served with summons. He's a defendant in the foreclosure account, never served, also a defendant on count two for the personal guarantee, which breached the forbearance agreement. Never served with summons until I came to the case and appeared on his behalf prospectively, pursuant to the Code of Civil Procedure. So the complaint is filed. We're not in the case. Foreclosure goes to judgment. We're still not in the case. And the foreclosure judgment terminates all of the defendant's interests. It doesn't even mention Crest Hill. If Your Honors look at the judgment of foreclosure in this case, you'll see that it recites that service or process in each instance was properly made, and the court has jurisdiction over the parties. And upon sale, the defendants paid party to the foreclosure in accordance with the statutory provisions, and all persons claiming by, through, or under them shall be forever barred and foreclosed of any right title, interest claim, or lien, et cetera, to the said mortgage real estate. So even though Mr. Kanaka was never served, and even though Mr. Kanaka has a derivative lawsuit on Crest Hill's behalf that the Cook County Court has said may proceed, and even though Division Gaylord named Mr. Kanaka, who has asserted that derivative interest, as a party defendant in the foreclosure, and even though the foreclosure judgment terminated his interest, which would include that derivative interest that he has asserted, Division Gaylord was allowed to voluntarily dismiss my client after extinguishing his asserted interest. And the derivative interest stems from Mr. Kanaka's relationship to whom? Crest Hill Land Development. As a limited liability partner. That's correct. Okay. And essentially, and you'll hear from counsel that the Cook County Court appointed Crest Hill's attorney, the one that consented to the foreclosure, and therefore, that's plenary. Anything that the attorney decided was in Crest Hill's best interest was, in fact, in Crest Hill's best interest. And Mr. Kanaka had no standing to be heard on his derivative claim because counsel had been appointed by the Cook County Court. And that's simply not the case. We cite a trilogy of cases involving members' rights to assert corporate defenses in various cases, including a foreclosure case that's very old from 1902, the Gunderson case, which involved the building of the Medina Temple in Chicago. And even in that case, although the court didn't allow the minority shareholders to intervene and oppose the foreclosure, the court said the reason we're not allowing you in that case is because your grievance against the majority shareholder who went out and took out these mortgages that he shouldn't have doesn't relate to the actual foreclosure. Your grievance is that these majority shareholders used fraud to become majority shareholders, which is not a defense against the lender in a foreclosure case. But the court did say that in an appropriate case, a shareholder can intervene on the corporation's behalf by showing the existence of a defense which the corporation neglects and refuses to make. So the very essence of this case law surrounding shareholder rights to assert defenses for corporate entities, including LLCs, involves this idea that the corporation's decision alone isn't necessarily conclusive. What would be the defense that Crest Hill did not assert? Defenses to the foreclosure? Yes. Numerous. We've outlined them in a brief. One simple one is the right of redemption. We all have a right of redemption under the Illinois Mortgage Foreclosure Law. Three months, the papers falsely recited that it was waived. It was never waived in any sense. The day that I presented our motions, I believe, was two months following the entry of the judgment of foreclosure and sale, roughly. There should have been at least another month given to possibly redeem, to see what could be arranged to redeem the property. Did you make those arguments in the trial court in this case? Yes. In the record here made before the trial court, two motions. I believe those arguments would be in the 2-1301 motion that I filed. It lists in a laundry list fashion all the different problems. I mean, there are numerous problems. Another one is that Division Gaylord attached the forbearance agreement that we discussed to its foreclosure complaint, saying this is the document that allows us to foreclose. Kanopka, Dubuque, Hill all agreed that we could proceed if this loan wasn't paid in 18 months. And we all know that they breached, Division Gaylord squarely breached that agreement by suing Mr. Kanopka on the personal guarantee. It's right there in the papers. You can't do it. And a party in breach can't enforce an agreement like that. So I get the case law for that proposition. Your time is up. You can finish your thoughts. Thank you. So basically the case boils down to the fact, the three basic facts, that Mr. Kanopka had a proper derivative claim, he was specifically named here, he was specifically extinguished here, and he was never served. And those three facts together warranted a decision by the trial court to vacate that judgment of foreclosure that extinguished his interest without him ever having been in the case and allow him to file a pleading and the trial court could then make its own decision on that pleading as to whether it had merit, didn't have merit. But the lack of standing decision that the trial court reached was an abuse of discretion to respectfully submit. Was Mr. Kanopka served with a copy of the foreclosure complaint? Never served, Your Honor. Never served. Is it sufficient to just serve Crest Hill? So I'm assuming Mr. Duva accepted service for Crest Hill or whatever the... It would have been, Judge, it would have been sufficient to serve just Crest Hill if they hadn't named Mr. Kanopka as a defendant in the foreclosure account. And that's really the wrinkle here. We're not suggesting a decision by this court that would open the floodgates and say that whenever a lender is getting ready to foreclose, it needs to go out and check all the county records to make sure there's no other litigation, derivative litigation or otherwise. That's not what we're suggesting here. The wrinkle here is Division Gaylord, first of all, knew about the ancillary litigation in Cook County because they were a party. They then named Mr. Kanopka specifically, didn't serve him, and extinguished his interests. And on those unique facts, which don't come along every day, we respectfully submit that the judgment of foreclosure in sale is infirm and should be vacated. Thank you. Mr. Hastert. Thank you, Justice Wright and Justice Holdridge and Justice Litton via voice and opposing counsel, Mr. Heilitzer. Thank you. My name is Scott Hastert. I represent Division Gaylord. The first thing I want to remind the Court, although I know you know it well, is the standard for this is abuse of discretion, whether Judge Carney abused his discretion. And I always like those words that we find for abuse of discretion. Is this decision arbitrary, is it fanciful, or is it unreasonable? And I don't think his denial of both motions was either one of those, and I will explain why. In 2010, Duba and Kanopka are the two members of Crest Hill Land Development. To put it mildly, they despise each other, and they have been in litigation since 2010 up at the Daly Center before Judge Adkins, who's heard this thing. And, again, counsel is a fine lawyer. Neither of us totally have the history of that. I think Mr. Heilitzer is the fifth attorney Mr. Kanopka's had before Judge Adkins, and there have been gaps where Kanopka doesn't have a lawyer, and the case keeps going and going. So the complaint he's talking about, and it looks like, Justice Holdred, you read that pretty thoroughly. The Fourth Amendment complaint was filed June 4th of 2013, and I think it contained 11 or 12 counts, and Judge Adkins made a decision on whether or not some of those counts should stand and shouldn't stand. The Forbearance Agreement, which is really the crux of this whole thing, and that's found in the record at C-47 to C-52, tells the whole story, and that was executed February 25th of 2014. So that's eight months after this Fourth Amendment complaint gets filed. These two guys who hate each other settled on a couple of issues, one of which was the Division Gaylord Loan. The Forbearance Agreement allows us to basically, the interest rate lowers, and if they haven't sold this vacant piece of industrial property in Crest Hill after 18 months, we get to foreclose. This is why I'm somewhat stunned by the argument of a 2-619 motion being brought in Will County because there's a matter pending in Cook County. The Forbearance Agreement was entered in the Cook County case. So the Cook County case not only would not prohibit me foreclosing in Will County, the Cook County case allows it. The settlement agreement that they entered into in 2014 lets me foreclose this mortgage if it's not paid in full in 18 months, and that is signed by Mr. Konopka and Mr. Duba, the Forbearance Agreement being, again, at C-47 to C-52. So not only is it not prohibited under 619, it's specifically allowed by the Cook County case because they settled that issue. When Mr. Heilitzer presented his motion, I had the sale set for July 5th of last year, 2018, the sheriff's sale. He came in on July 2nd with an emergency motion. Everybody was there. Mr. Moynihan was there for Roger Duba, Mr. Heilitzer was there for Konopka, and Steve Foucault was there for Crest Hill. And it's unrebutted, the story was told by Moynihan, who has represented Duba throughout the Cook County litigation, and Foucault, that Foucault brought this foreclosure that I filed in 2016 before Judge Atkins and said, what are we going to do with this? Crest Hill land development is a defendant. And so he made a motion that he be allowed to represent Crest Hill. One of Mr. Konopka's prior attorneys objected and filed a brief and said, I don't want Foucault representing Crest Hill in this case in Will County. Judge Atkins overruled Mr. Konopka's objection and allowed Mr. Foucault to defend the case I filed, the 16 foreclosure case, which is right here in front of you. Judge Atkins specifically, over Konopka's objection, allowed Foucault to defend this thing. That means Foucault speaks for Crest Hill land development. A limited liability company, in this instance, there's only two members. Suppose there were ten members. Does each member get to have their own attorney and get to speak for the limited liability company? That would be chaos. And so there's one attorney who speaks for the limited liability company, Crest Hill, and that's Steve Foucault. Now, as I left a .22 infantry drive and drove west on Interstate 80, I've been down here a lot in my 34 years, and I wondered who I was going to have to look like a fool in front of when the three-person panel comes up. The forbearance agreement, C-47 to C-52, I was sent that by the client. I skimmed it over, and I am embarrassed to say I didn't read it as thoroughly as I should have. And tucked in one of the paragraphs with no headline on it is an agreement that I wasn't representing Division Gaylord in Chicago and Cook County when they did this forbearance agreement. In there, Canopka and Duba are released from their personal guarantees. So I didn't catch that, and I filed a suit, and I named Canopka as a personal guarantor, and I named Duba. And that was my error. I got a call from John Moynihan, who represents Duba, and said, Scott, you don't read it. Yes, it is. This is all in the oral record that we, when all the lawyers were there for his motion. I got a call, and I said that Moynihan was standing there, and I said, Oops, I am sorry. I missed the fact that there were personal guarantees that were released. So I have, since that time, I pulled the process server off, and we never, and that's in the court file, there were numerous attempts to serve Mr. Canopka, and once I found out we released him, I yanked the process server off, and you never see another alias summons to get Canopka, and you never see another attempted service because we released him. I can't sue him. I can't go after him on the personal guarantee. So we never terminated any rights of Mr. Canopka because he didn't have any rights. The LLC, Crest Hill Land Development, owned the real estate. They held the mortgage. That's the mortgage that I foreclosed upon. Mr. Canopka was named as a personal guarantor by mistake, and as soon as we realized it, I pulled it. I never sought any judgment against Canopka or Duba, and when I submitted my judgment of foreclosure on May the 3rd of last year, in the area where it says deficiency judgment against, I hand wrote the words no one in there. So it would be crystal clear I was not seeking a deficiency judgment on the personal guarantees against Mr. Duba and against Mr. Canopka because I couldn't because we released them. So the judgment of foreclosure entered against Crest Hill Land Development, who was ably represented by Stephen Foucault. I submitted an affidavit from my client. He felt there was about $80,000 that shouldn't be in there. He brought it up. I went back to my client. We agreed. It got taken out, and their lawyer then had to agree that the rest of our affidavit was legitimate and valid, and we proved up our mortgage foreclosure. Now, closing counsel says that his client should have been served, allowed to participate in this foreclosure action because his client has the right to assert a defense on behalf of Crest Hill. That's correct. I disagree with that totally. And if you look in the record at page C-157, C-157, they did a forbearance agreement and they did a settlement agreement, and he's talking about the settlement agreement. The settlement agreement says he gets to object to the stay of proceedings or any stay of proceedings that Judge Adkins entered at the Daley Center. That is not talking about him coming down to Will County and intervening. That is talking strictly about him having the right to, again, argue this stuff. He can argue this stuff in front of Judge Adkins. That case is still going on. And if he feels this was all done fraudulently, he can go back and Judge Adkins said he could address that. And I submitted in the appendix in my brief, I got my sale confirmed on August 8th of last year. Mr. Heilitzer came in on an emergency motion before Judge Adkins eight days prior on July 31st of 18 and asked Judge Adkins to stop me from confirming the sale. And Judge Adkins didn't. And Judge Adkins' order is in the end of my brief. It's the appendix to my brief. And Judge Adkins specifically said, Plaintiff is allowed to maintain any appropriate arguments that he's entitled to a credit or some or all of the funds that are presently pending before this Court. Plaintiff's emergency motion is denied in its entirety. So he wanted Judge Adkins to stop me confirming the sale. Judge Adkins, in that order, essentially said, I'm washing my hands of this. I'm not going to get involved in the Will County foreclosure. The Forbearance and Settlement Agreement let counsel go ahead in Will County and let Division Gaylord foreclose. I appointed Steve Foucault to handle that on behalf of Crest Hill. Judge Adkins washed his hands of that and said, I'm not going to decide any of that. However, I've got a case before me that's been pending since 2010 that's got all kinds of counts. Those guys can duke it out up here about the money. And he denied stopping me from confirming the sale. That also knocks the wind out of the 2-619 motion that they wanted Judge Carney to grant. The Cook County judge said that he wasn't going to stop me from confirming the sale, which I did. So if there were matters pending before Cook County, again, where Judge Adkins was going to say, oh, I want to decide those issues. I'm not going to let the foreclosure judge decide it. He completely washed his hands of it, and he let me confirm my sale and finish my foreclosure action in Will. Something else I want to just discuss. So he did a punches pile. Yes, that's a pretty good analogy, Justice Oldridge. I should also add, the day that Mr. Heilitzer came in on July the 2nd with these two motions before Judge Carney in Will County, I stated on the record, and it's all there on the transcript, we sought no relief against Mr. Konopka. We're not seeking any relief against Mr. Konopka. And I named him in the caption of the case, and I said, Judge Carney, let me dismiss him with prejudice because I want it crystal clear, you know, we're not suing him in this case. We're only foreclosing against Crest Hill Land Development. Judge Carney granted my motion. I cited cases that, you know, a motion to dismiss by a plaintiff is pretty much, you've got unfettered discretion to do it. Judge Carney granted it. Mr. Konopka has been dismissed with prejudice. He's gone. I can't pursue him for anything. And I finished my foreclosure. Division Gaylord owns this beautiful vacant piece of industrial property in Crest Hill, and that's where we are. Something else, again, that I want to mention. Counsel is... Mr. Duba also had an interest in that property as part of Crest Hill. Well, he's a member. I mean, the only entity, legal entity, that has a legal interest in the real estate is the LLC, Crest Hill Land Development LLC. That is the title holder. That is the only legal entity that has a legal interest in that real estate. The members of Crest Hill Land Development LLC are Roger Duba and Mr. Konopka, but they don't have any individual ownership in that real estate. I mean, that's why people set up limited liability companies, so they're not liable for anything. So you don't get the assets of the LLC. The LLC owns the assets, and you don't get the liabilities of the LLC. That's why... Does the LLC still exist? Yes, it does. The LLC is still in existence to this day. So the other thing I was just going to say is Mr. They're minus an asset called that lot. Yes, they've lost that piece of property that is to foreclosure. Division Gaylord owns it. They'd love to sell it. It's industrial property in Crest Hill. The other thing... Pardon me? Oh, thank you. The only other thing, Justice, I wanted to clear up is that, again, you know, counsel is seeking to vacate a judgment. Just to be clear, the only judgment in this case was a judgment against Crest Hill Land Development. So he doesn't get to come in as the attorney for one of the members and try to get a judgment vacated that was never entered against him, his client. As it stands right now, his client has been dismissed with prejudice from the case. So he's trying to come in as an attorney for one of the members and step in on behalf of the Crest Hill Land Development LLC. He doesn't have the right to do that because he doesn't represent them. The only entity that should be moving to vacate a judgment against Crest Hill Land Development LLC is Crest Hill Land Development LLC. They had a lawyer, and the lawyer didn't do it. He agreed with what I filed. And lastly, just to correct what counsel has said, if you look at counsel's pleadings in Will County, he did not bring these as a derivative action or anything else. He just came in as Peter Konopka, seeking to intervene in the case. So there's nothing in the Will County pleadings indicating he filed a derivative action. I think he's filed a derivative action in Cook, but he's not filed a derivative action in Will. He just came in as individual Peter Konopka, member of Crest Hill Land Development LLC. I've said, Mr. Konopka, you're really not welcome here because you're one of the members of Crest Hill Land Development LLC. I sued a limited liability company. Members of an LLC aren't liable for the debts. And, sir, I goofed. We released you from the personal guarantee. Sorry I inconvenienced you, sir. I should never have put your name on the caption. And that's really what the record says. That's what the oral argument was all about before Judge Carney. He let me dismiss Mr. Konopka with prejudice. So Mr. Konopka should not even be talking about this lawsuit. I'd like you to read this at the standard of review, if you don't mind. Sure. Can you tell me why? These are motions under 2-619 and under 2-1301. Both of us concur in our brief that the correct standard is abusive discretion. Standing is de novo. It's a question of law. So that's why I wanted you to explain. Because the parties agree that it's abusive discretion. No, I understand. Both of us have been wrong before, and you folks have been right. But I think a 619 motion should be reviewed by abusive discretion, and that's how he brought a 619 motion, and he also brought a 1301 motion. He didn't bring anything. He wasn't able to bring anything. Well, he brought two motions, argued them, and they were both denied. He filed them, and the judge said that you can't argue them because you don't have standing. He denied both motions, yes. That seems to be, to me, a question of law. Okay. You know, I want to hear your thoughts. This is the only chance that you have. Well, we get into Judge Carney did say standing. I guess it's a question of, you know, I think the result is right. That's what he said. I think the result's right. Did he use the right term? I don't know. I mean, I think there were other reasons besides standing he could have. That's a broad term. I mean, standing is, well, we go back to law school for what that means, but the fact is that, as I said, the lawyer for Mr. Konopka is trying to get the judgment against Crest Hill vacated. So you have an attorney who's not of record. I think he did. Okay, well, I gave it a shot. Thank you very much, both of you. Mr. Heideiser, I know I mispronounced your name, but I apologize. It's almost as bad as a cell phone going off. If I might, I'd like to start with just a couple of corrections. So counsel advised your honors that he simply made a mistake and named Mr. Konopka and Mr. Duba, sued them both on the personal guarantee, not realizing they'd been released. That's not correct. The complaint only sues Mr. Konopka on the personal guarantee in count two of the complaint. There is no count three. There is no claim that Division Gaylord filed against its alter ego, Roger Duba, for the personal guarantee. So intent isn't really involved in a breach of contract. So even if they had named Mr. Duba, it wouldn't affect my argument. But I did want to make that clarification. They did breach the settlement agreement, the forbearance agreement, by suing Mr. Konopka and only Mr. Konopka on the personal guarantee. Counsel also suggests that Mr. Konopka was casually included in the caption and that there was never any relief sought against him in the foreclosure claim. And again, the record at page six, which is just page three of the complaint, names of persons who are joined as defendants and whose interest in or lean on the mortgage real estate is sought to be terminated. And Mr. Konopka is included as a named defendant. What constitutes a judicial admission? Statements in unverified complaints, that's a whole body of law. My understanding is they're not judicial admissions, but it's a pleading. So it's a pleading that seeks to exercise jurisdiction over a party and adjudicate rights of a party. And again, just to repeat, if you look at the judgment of foreclosure in sale, it doesn't identify Cresthill. It doesn't say the court hereby enters a judgment of foreclosure in sale against Cresthill. It says against the defendants. The defendants are foreclosed from asserting any claim, right title or claim to this property. The defendants are liable. The defendant's this, the defendant's that. And there's no reference to Cresthill. So when you take the complaint, which identifies my client as a party, and you take the judgment, which forecloses his interest, and you take the third fact that he has an interest asserted derivatively in Cook County for Cresthill, he was knocked out of the judgment of foreclosure in sale without ever having been served, which is why we appeared for the first time, asked to just unwind the judgment of foreclosure, allow us to file a response to the complaint, and let things go from there. Also, counsel's mischaracterizing the forbearance agreement. He suggests that the forbearance agreement only had to do with was basically a concession in Cook County that they could go ahead and foreclose, and no objection to any subsequent foreclosure would be asserted by Mr. Kanaka pursuant to those terms. And we cited the relevant provisions of the forbearance agreement and the settlement agreement in our brief. I'd just like to read briefly that Mr. Kanaka specifically reserved the right to make any argument in any subsequent foreclosure or other enforcement action filed by lender, that's Division Gaylord, with respect to the state of proceedings issued by the court in the foreclosure litigation, pending resolution of the litigation. And the agreement goes on to provide that notwithstanding the foregoing statements in this paragraph, Mr. Kanaka does not release claims based on the first national loan or any claims against Crest Hill or DUBA, except claims arising out of the dispersion of that $6 million in proceeds that I talked about. And, again, that was the primary purpose of the forbearance agreement, along with the other two purposes. I'm sorry, you have one minute. Thank you. So the forbearance agreement, even if it's applicable, which is not due to Division Gaylord's breach, doesn't bar Mr. Kanaka from asserting his derivative defenses for Crest Hill in the foreclosure case. The Cook County appointment that counsel mentioned of counsel to represent Crest Hill does not override Mr. Kanaka's right to assert a defense in the foreclosure case. First of all, the very essence of the shareholder action is when the corporation declines. Corporations are usually represented by counsel, declines to take action. And then the shareholders get their own attorney and make their defenses if the facts warrant that. And that's the Clayton v. Mims case that we cited in our brief, which I believe is a 1979 appellate court decision. It wasn't a foreclosure, but it did involve a collusive lawsuit between a majority shareholder and his lenders to allow a judgment to be entered against the corporation, which was actually a personal obligation of the majority shareholder. So he gets together with the lender. He says, yeah, enter this judgment against the court. I'm fine with that. And the minority shareholders were allowed to come in and object to that. And, of course, they had their own counsel. The majority shareholder had corporate counsel, and he didn't object because he was serving the interests of the majority shareholder. And so the very essence of a case like this where someone's coming in and saying, I'm bringing a derivative action for the LLC by statute involves separate counsel. And just for the record, we've set forth in our brief exhaustively that this particular lawyer who was appointed to represent Crest Hill was irretrievably biased against Crest Hill's own interests. It's in the record, judges, that he represented Division Gaylord, the plaintiff in this case, in a foreclosure action against Crest Hill that was filed previously involving the very same foreclosure, the very same mortgage in note. And although he wasn't the foreclosure lawyer, he sued the prior foreclosure lawyer that represented Crest Hill. Their name is probably in the record as Crowley and Lamb. And so Crest Hill's own appointed lawyer was hired by Division Gaylord to sue Crowley and Lamb, Division Gaylord's prior foreclosure counsel, alleging that Crowley and Lamb didn't properly protect Division Gaylord's interests with respect to certain escrow proceeds that were ultimately used to pay off a part of this loan. So here we've got Crest Hill's own attorney with a fiduciary obligation to Division Gaylord saying that Division Gaylord's interests were not properly protected with respect to escrow proceeds on the one hand. On the other hand, he's expected to argue in any meaningful sense that the Division Gaylord's very right to foreclose is questionable. It's not possible. If he's arguing that escrow proceeds payments weren't properly protected, that means the loan is valid. So he's arguing for Division Gaylord that the loan must be valid. How can he possibly argue for Crest Hill at the same time that the loan could be invalid? And that's why we respectfully submit he did that. He allowed a million dollars in obvious credits to be forfeited. The judgment should at least be obvious things in the record that we've pointed out in our briefs should have been discounted. He allowed the redemption period to expire. There were other inflated calculations and other mistakes that he allowed to go forward with this foreclosure judgment. All of those are in our briefs. Can you speak to standard of review, please? I am a bit taken aback, as my colleague is. I certainly, when preparing the briefs, looked up the standard of review for 2619A3 and 2-1301 and found them to be of use of discretion. I would have to. The Court's comment is intriguing. I would have to. Lack of standing is sort of an overlay. It's something I missed. With apologies to the Court, I'm certainly glad to supplement if that's being requested, but I can't add to that. I'm curious as well, so I would appreciate supplemental briefs. 14 days, is that enough time, or are you too busy to get that done? We can certainly do that. Are we doing cross-briefs, or? I only want briefs on the issue of standing. That's it. A standard of review. I'm sorry. Sure. If you want a 14-day, that's fine, Justice. I get it. Just cross-filings on the standard of review. You don't want back and forth, right? Just each of us to submit a brief on standing for standard of review? Yeah, I think 14 and 14. I think this is your appeal. You establish it first. Oh, you go first, then I go. Okay. That works for me. No reply, though. I appreciate that very much. I have another question. You can be seated. Thank you, Justice. Thank you for the respect. Thank you. I'm confused why appointing Mr. What is his name? Fuca? It's actually Fiocco, F-U-O-C-O, which means fire. He told the court in the record. It means fire? Fire, in Italian. Oh, fire. So, Mr. Fire is appointed in Cook County to defend Crest Hill in a lawsuit initiated by Mr. Panacca, correct? That's correct. He's appointed in Cook County to come down here in Will County and defend Division Gaylord's foreclosure complaint. How can the Cook County judge appoint him in a Cook County case to come down and act in Will County? The judge in that case is acting somewhat like a receiver, which is what the court may be wondering why the case has gone on so long. It has gone on long. But Crest Hill engages in development activities and funds come in. Escrows are set up. Fights occur. Disputes occur over who gets the proceeds over the years. Some of those proceeds, again, $5 million. Is it usually done this way, where a judge in one jurisdiction, Will County, imposes on another? There was a receiver appointed in the case for a while, if that helps at all. So when you have receivers and you have receivers operating companies under judicial oversight in the Chancery Division in Cook County, it does happen. This is one of the longer ones I've seen. And you didn't file an objection to it. You opposed the appointment of Mr. Fire in Cook County, but you did nothing to oppose it in Will County. In Cook County, I understand that my predecessor opposed his appointment. And that was disregarded. The judge went ahead and appointed Mr. Fiocco to come down to Will County and defend. In Will County, I came in and pointed out to the judge in my motions why Mr. Fiocco's representation was inadequate as an additional set of facts that the court should consider in whether to grant my motions. There were palpable, obvious mistakes and errors in failing to defend Crest Hill's interests. And the judge's answer was, you can't speak if you don't have standing. That's right. That's right. And he said, Mr. Fiocco is standing here in front of me saying that he has no objection. Mr. Fiocco, if you... You've answered my question. I think you've gone over time. I don't want to be unfair to the other side. Thank you. Thank you. We'll be taking this matter under advisement. I can't promise that we're going to issue a decision as speedily as we like to do. But the issues in this case are complicated, and both of you did a very fine job of clarifying some of our concerns. So thank you very much. And we will get an order from the clerk, 14 and 14. Is that correct? We're telling you now, and our clerk will probably send you an order. Thank you very much. If that doesn't happen, 14 and 14. Okay, well, we'll do it anyway. You guys get along well enough to call each other. Yeah, we're not new, but we're not going to be inconfident. I appreciate the civility. Thank you. So we'll stand at brief recess for the next case.